COMMONWEALTH *vs.* DAVID E. SMITH.

No. 87-1337.

Suffolk.    October 14, 1988. — December 23, 1988.

Present: DREBEN, KAPLAN, & KASS, JJ.

*Witness*, Bias, Impeachment. *Evidence*, Impeachment of credibility, Other offense, Prior conviction, Prior misconduct, Bias, Prior inconsistent statement. *Error*, Harmless. *Robbery*. *Assault with Intent to Rob*.

Questions by the prosecutor to a defense witness at a criminal trial concerning unrelated criminal charges pending against the witness were improper, in the circumstances, to impeach the witness's credibility where only a possibility of a generalized bias against the prosecution was shown and no particular bias with respect to the case on trial was demonstrated [674-678]; however, it was not error requiring reversal for the judge to allow the inquiry in view of the weight of the evidence against the defendant [678-679].

At the trial of indictments charging armed robbery and assault with intent to rob, the judge did not err in excluding a prior inconsistent statement by a victim witness about the name of the man who robbed her, where the defendant's offer of proof was unclear and no question was asked which raised the point urged on appeal. [679-680]

INDICTMENTS found and returned in the Superior Court Department on April 17, 1986.

The cases were tried before *John F. Murphy, Jr., J.*

*Steven W. Parnes*, Committee for Public Counsel Services, for the defendant.

*Nijole Makaitis Slezas*, Assistant District Attorney, for the Commonwealth.

KASS, J. On his appeal from convictions of armed robbery and assault with intent to rob, the defendant asserts that the trial judge erred: (1) in permitting the prosecutor to question a defense witness, for the purpose of establishing bias against the government, about criminal charges pending against the witness; and, (2) in excluding a prior inconsistent statement

by a victim witness about the name of the man who had robbed her. We affirm.

These, in outline, are the facts the jury could have found. At about 4 A.M. on February 22, 1986, Harriet Hartfield, with Lydia Wharton and Darryl Rowell as passengers, pulled into a small parking lot on Geneva Avenue in Dorchester to drop Rowell off near his cousin's home. As Rowell got out of the car, five men, all brandishing firearms, descended upon Rowell and the two women and relieved them of money and valuables. During the ten or fifteen minutes in which the crime took place, the robbers brutalized and terrorized their victims. Two victims were forced, at gunpoint, to lie in a puddle, one upon the other. Earlier, one of the assailants had kicked Rowell for failing to keep his eyes sufficiently averted from the attackers' faces. The women were dragged from the car. Hartfield was told, "You look at me, I'll blow your fucking brains [out]." Nevertheless, all the victims testified that they had a good look at the defendant and remembered that he wore a blue sheepskin jacket with a matching hat.

Towards the end of the robbery, at least one of the attackers called out to the man in the sheepskin jacket, "Hey, Dave," "D, c'mere," "c'mon D-man," or "c'mon Dave-man." By this time police had begun to approach the scene. Not long before Hartfield, Wharton, and Rowell were mugged, three men had been beaten and robbed at the same location by five armed men. One of that second group of victims, Javier Vazquez, reported the earlier incident to the police.

Hartfield, Wharton, Rowell, and Vazquez each picked the defendant Smith's picture from a photographic array and identified him in court as the robber who wore a blue sheepskin jacket and hat with flaps. They also marked him as the man addressed variously as "D," "D-man," "Dave," and "Dave-man." Hartfield, Rowell, and Wharton also identified (one of them positively and two of them tentatively) as one of the five robbers a James Gunn who, as will appear, could not have been on the scene.

1. *Evidence that a defense witness was subject to pending charges.* Gunn was called as a witness by the defense to testify

that he was confined in Charles Street jail between February 17, 1986, and March 5, 1986. Consequently, he was dramatically ineligible to participate in the criminal activity which took place off Geneva Avenue in the early hours of February 22. If three witnesses were wrong about James Gunn, the defense hoped to persuade the jury that all the witnesses may have been equally mistaken about Smith. Cross-examination, aided by photographs, quickly established that James Gunn had a look-alike brother, Sean. The latter could have been among the gang active on February 22.

Over objection, the prosecutor then put the following question: "Now Mr. Gunn, do you have pending criminal charges against you in Suffolk Superior Court?" Gunn answered, "Yes." The purpose of the question (there had been a voir dire) was to suggest that the witness was likely to be harboring a grudge against the government and, therefore, ought not to be credited. Deferring, for a moment, the general subject of whether the pendency of charges against defense witnesses is a proper subject of inquiry, the question in this particular case was surely an ignoble one. The Commonwealth was aware (it had, demonstrably, examined James Gunn's criminal record and, earlier in the trial, the prosecutor had acknowledged that James Gunn was in custody on February 21, 1986) that Gunn was, in fact, incarcerated and had a look-alike brother. Up to that point, Gunn had testified about nothing else. There was no justification for the Commonwealth to attack the credibility of a witness simply for the sake of mussing him up when it had already verified the truth of the only two facts to which the witness had testified.

We turn to the more general issue of the correctness of asking defense witnesses about arrests or pending charges to show bias against the government. Arrest, indictment, or the pendency of charges in some other form, is not, as such, a basis for impeaching a witness. *Commonwealth* v. *Bishop*, 296 Mass. 459, 461-462 (1937). *Commonwealth* v. *Haywood*, 377 Mass. 755, 759-761 (1979). The very existence of a statute, G. L. c. 233, 21, which authorizes the use of a *conviction* to affect the credibility of a witness, prompts the conclusion that

something less than a conviction cannot be used for general impeachment purposes.

Yet evidence of the pendency of criminal charges has been received to suggest that a prosecution witness is seeking favor with the government, i.e., that a deal has been struck between the witness and the prosecution which provokes a testimonial bias in favor of the government. *Commonwealth* v. *Haywood*, 377 Mass. at 760-761. *Commonwealth* v. *Hogan*, 379 Mass. 190, 191-192 (1979). *Commonwealth* v. *Henson*, 394 Mass. 584, 586-587 (1985). *Commonwealth* v. *Barnes*, 399 Mass. 385, 392 (1987). *Commonwealth* v. *Lewis*, 12 Mass. App. Ct. 562, 572 (1981).

As to defense witnesses, it is a far less persuasive proposition that if they are somehow in the toils of the law, they will, for that reason alone, be disposed to testify falsely against the government and in favor of the defendant. It is more likely that evidence of pending charges simply discredits, i.e., smears, the witness. The question, as such, has not been commented upon in the Massachusetts cases.

Courts in other jurisdictions which have declined to permit the use of prior arrests or pending charges against defense witnesses have reasoned that the prejudicial and inflammatory nature of the evidence outweighs its probative value. See *United States* v. *Maynard*, 476 F.2d 1170, 1174-1175 (D.C. Cir. 1973); *State* v. *Johnson*, 106 Ariz. 539, 541 (Ariz. 1971); *Moore* v. *Commonwealth*, 634 S.W.2d 426, 436 (Ky. 1982); *State* v. *Taylor*, 498 S.W.2d 614, 616-619 (Mo. Ct. App. 1973); *Commonwealth* v. *Reese*, 475 Pa. 120, 121-122 (Pa. 1977). The connection between an arrest or complaint and a generalized bias against all law enforcement authority is too frail. Two courts have proceeded on the ground that their State statutes (as does G. L. c. 233, § 21, in Massachusetts), by permitting the use of prior convictions to impeach witnesses, implicitly reject the use of arrest and complaint. See *Parker* v. *State*, 280 Ala. 685, 689-690 (Ala. 1967); *Fulton* v. *State*, 335 So.2d 280, 283 (Fla. 1976).

In those cases in which courts have countenanced examination about prior arrests or pending charges to suggest bias on the

part of the witness, there has generally been a link between the witness's entanglement with law enforcement and the main case on trial. The bias sought to be established is a particular one, rather than a general one. So, for example, in *United States* v. *Dardi*, 330 F.2d 316, 336 (2d Cir. 1964), a witness named Brann had testified for the government. The defense trotted out a man named McCollom, who testified that Brann's reputation for veracity in Geneva, Switzerland, was "'just as poor as it could possibly be.' On cross-examination, the prosecution asked McCollom whether or not there was a warrant of arrest outstanding against him in Switzerland for embezzlement of $50,000." That question fairly probed the likelihood that McCollom harbored a bias against Brann because Brann had blown the whistle which led to the embezzlement charge. In *United States* v. *Musgrave*, 483 F.2d 327, 338 (5th Cir. 1973), the prosecution was permitted to inquire of a defense witness about an accusation which had its source in the same criminal conspiracy to defraud a savings institution. See *Waters* v. *State*, 360 So.2d 358, 365-366 (Ala. Crim. App. 1978) (defense witness arrested together with defendant); *State* v. *Moynahan*, 164 Conn. 560, 600-602 (Conn. 1973) (arrest of defense witness grew out of the same investigation, the same type of criminal behavior, and the report of the same informer which underlay the trial of the defendant); *State* v. *Sweeney*, 443 So.2d 522, 529-530 (La. 1983) (same officers arrested defense witness and defendant). Inquiry about prior arrests was allowed when defense counsel's own examination let the issue out of the bag. *People* v. *Stratton*, 64 Mich. App. 349, 354-356 (Mich. Ct. App. 1975). See also *Ford* v. *Kremer*, 360 Mass. 870 (1972), a civil case, in which the court concluded that it was not an abuse of discretion to allow questions to a plaintiff's witness about a drunk driving arrest which occurred when the witness was in the company of the plaintiff.

Questions to a defense witness about other charges on a theory that the existence of such charges might provoke a general anti-government bias appear to have been tolerated in only one case which has come to our attention, *United States* v. *Bagaric*, 706 F.2d 42, 68 (2d Cir. 1973) (defense witness

was asked about her brother's prosecution for air piracy). Compare *United States* v. *Greschner*, 802 F.2d 373, 382-383 (10th Cir. 1986), in which a general anti-government bias was thought to arise, not from pending charges, but from twelve to thirteen years of residence in various prisons, which might have brought about subscription to a prison code of noncooperation with prosecutors.

As we have already intimated, the idea that an arrest or accusation must surely inculcate within the accused a generalized bias against the government is too tenuous to justify the tarnishing of a defense witness and, by derivation, the defense. We do not, however, embrace a solution at the opposite pole, that questioning about prior arrests and prior or pending accusations is never permissible. We are of opinion that if the facts point to the possibility of a particularized bias,[1] the trial judge possesses discretion to permit cross-examination which elucidates prior arrests of, or charges against, the witness.

Applying that standard to the case before us, the matter of James Gunn's prior arrest was not a legally proper subject of inquiry. Gunn had no connection with the February 22, 1986, robbery, and the facts put before the court suggested nothing other than the possibility of a generalized bias against the government.

Allowing the inquiry was not, however, reversible error. It is hard to think that the jury were likely to be swayed by hearing about the pending charge against Gunn. The whole point of Gunn's testimony was that he was in jail when the robbery occurred. The jury were not likely to have mistaken him for a model citizen and, therefore, to have thought less of him by learning there were unspecified charges against him. See, as to harmless error, *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946); *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445-446 (1983). *Commonwealth* v.

---

[1] By way of illustration, particularized bias might be thought possible if the accusation against the defense witness grew out of the same episode which led to the charge for which the defendant is standing trial.

*Royce*, 20 Mass. App. Ct. 221, 228-229 (1985). Compare *Commonwealth* v. *Ford*, 397 Mass. 298, 302 (1986); *Commonwealth* v. *Papadinis*, 23 Mass. App. Ct. 570, 576 (1987), *S.C.*, 402 Mass. 73 (1988).

The evidence against Smith was potent. Four victims identified him and identified the blue sheepskin jacket the defendant had worn on the night of the crime and which he had the bad judgment to wear on the first day of trial. One witness had heard the defendant addressed as Dave or Dave-man. Smith's defense was that he was not there, but the alibi witnesses who testified (the defendant's stepfather, the defendant's mother, and a neighbor who was friendly with the defendant's mother) gave accounts sufficiently discordant in detail so as to provide meagre support for the defendant. See *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983), which suggests the following factors to be considered in assessing the harmfulness of error: (1) the weight of the evidence against the defendant; (2) the relationship between the evidence erroneously received or excluded and the premise of the defense; (3) who introduced the disputed issue; and (4) the availability and effect of curative instructions.

2. *Exclusion of prior inconsistent statement.* Defense counsel attempted to have Gwendolyn Richardson, a neighbor of the defendant and a co-worker of Hartfield, one of the victims, testify about a conversation between the two of them later in the day of the robbery. Defendant's trial counsel expected Richardson to say that Hartfield said that the robber in the blue sheepskin jacket had been addressed as "Dana." That would have been inconsistent — at least arguably so· — with Hartfield's earlier testimony that the youth in the sheepskin jacket had been called "Dave," or "Dave-man." On proper offer of proof, evidence of the asserted prior inconsistent statements would have been admissible, *Robinson* v. *Old Colony R.R.*, 189 Mass. 594, 596 (1905). *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942). Liacos, Massachusetts Evidence 135 (5th ed. 1981). Compare *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982), and *Commonwealth* v. *Beauregard*, 25 Mass. App. Ct. 983, 984 (1988), in which the wide discre-

tion of the trial judge is recognized when the statements are not plainly contradictory. Here defense counsel did not describe with clarity the discrepancy he hoped to establish. In the circumstances, the judge might reasonably have excluded accounts by Richardson of what Hartfield had said to her. As the interrogation of Richardson developed, the judge allowed some account of her conversation with Hartfield. The objection the judge sustained was to a nonresponsive answer which the witness volunteered. Invited to put another question to the witness, defense counsel declined. The offer of proof was unclear and no question was asked which raised the point now urged on appeal. There was no error in the rulings of the trial judge.

*Judgments affirmed.*