COMMONWEALTH *vs*. SPENCER E. LIBERTY.

Nos. 87-756 & 88-P-1141.

Plymouth. October 14, 1988. — February 16, 1989.

Present: DREBEN, KAPLAN, & KASS, JJ.

*Practice, Criminal,* Continuance, Argument by prosecutor, Assistance of counsel. *Evidence,* Cross-examination, Impeachment of credibility, Bias. *Witness,* Impeachment, Bias. *Constitutional Law,* Assistance of counsel.

At a criminal trial the judge did not abuse his discretion in denying the defendant's motion, made after the jury had been impaneled, for a continuance because a defense witness was unavailable, where two continuances had been granted for the same reason, where the appearance of the witness voluntarily was doubtful, and where securing the attendance of the out-of-State witness through process would have delayed the trial two weeks. [3-4]

Although the judge at a criminal trial erred by allowing the prosecutor to impeach a defense witness with his prior silence when no foundation for such impeachment had been laid, the defendant demonstrated no resulting prejudice that would require reversal of his conviction. [4-6]

References by the prosecutor at a criminal trial, during cross-examination of a defense witness, to charges pending against the witness were improper; however, in the context of the trial as a whole, the error could not have affected the jury's verdict. [6-7]

Misstatements of the evidence by the prosecutor in his closing argument, in
    light of the strength of the evidence together with the jury instructions,
    did not create a substantial risk of a miscarriage of justice. [8]
There was no merit to a criminal defendant's contention that his trial coun-
    sel had rendered ineffective assistance. [9-11]

INDICTMENT found and returned in the Superior Court De-
partment on February 4, 1986.

The case was tried before *William H. Welch,* J.

*Thomas B. Vawter* for the defendant.

*Ann E. Rascati,* Assistant District Attorney, for the Com-
monwealth.

DREBEN, J. In the aftermath of an altercation over fifty
dollars, both the defendant and the victim were injured. The
argument began over money the defendant had given the victim
for the purchase of cocaine for the defendant's girlfriend. The
victim, Edward Pina, had failed to procure the drug or return
the money. As might be expected, the accounts of the episode,
which took place on December 29, 1984, in Plymouth, differed.
After hearing testimony from both Pina and the defendant, as
well as from others, a Superior Court jury found the defendant
not guilty on an indictment charging assault with intent to
murder. They found the defendant guilty on an indictment
charging assault and battery with a dangerous weapon.

The defendant's appeals from his conviction and from the
denial of his motion for a new trial raise the following claims:
the judge abused his discretion in denying a continuance; the
prosecutor improperly examined a defense witness about his
pretrial silence and about pending charges against him; the
prosecutor misstated evidence to the defendant's prejudice in
his closing argument; and the defendant was denied the effec-
tive assistance of counsel because, as a result of counsel's
failing to file a request for a bill of particulars, the Common-
wealth was able to rely on three possible incidents of assault
and battery with a dangerous weapon and was not limited to
just one. The defendant also claims that counsel failed to argue
self-defense or to insist that the jury be given a specific unani-
mity instruction. Although the trial was not free of error (some

of the cross-examination of a defense witness should not have been allowed, and the prosecutor impermissibly strayed from the evidence in closing argument), when the trial is looked at as an entirety, we conclude that reversible error did not occur.

The fight began in front of an establishment called Maggie's Pub. The defendant sought the return of his money. When Pina claimed he had none, the defendant struck him. Although Pina claimed the defendant was the first to draw a knife, the defendant testified that the knife was Pina's, that Pina first slashed him, and that he, the defendant, managed to pull it away. He explained that he hit Pina with the butt of the knife while he was lying on the street on top of Pina.

Pina testified that, through the ruse of stating that he had money in his pocket, he managed to get up and extricate himself from the defendant's grasp. He ran, but was caught by the defendant, who came after him, carrying the knife, and Pina was then stabbed. Pina again broke free and the fight resumed a few minutes later at a third location, in or in front of the Governor Bradford Hotel. The defendant testified that he, from above, saw Pina ripping chains from the defendant's girlfriend's neck and trying to strangle her. The defendant jumped ten to fifteen feet onto a cement area to assist her, at which point, he again, according to his own testimony, hit Pina. The police arrived shortly thereafter.

1. *Continuance.* By agreement the case was assigned a trial date of July 29, 1986. On September 16, 1986 (apparently the date for trial had been continued to that day), the defendant requested a continuance because his former girlfriend, a percipient witness, was unavailable. The motion was allowed, and trial was set for September 30, but, on that day, the defendant sought another continuance. The trial was rescheduled for October 14, 1986, but after the jury were impaneled, an assistant district attorney received a phone call from the same defense witness, who was in New York, saying that she could not come up to Boston because her son had suffered an accident. The defendant's counsel sought a continuance, although admitting that he was not sure the witness would come on her own. Questioned by the judge, counsel indicated that it would take

two weeks if he had to procure the attendance of the witness under the uniform act to secure the attendance of witnesses, G. L. c. 233, §§ 13A-13D. The judge stated that counsel should use his best efforts to get the witness to Boston, but that he would proceed with the trial. The defendant objected.

There was no abuse of discretion in not granting yet another continuance after the jury were impaneled, particularly since the voluntary appearance of the witness was doubtful, and involuntary attendance would have required a delay of at least two weeks. See *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517-518 (1972); *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276 (1973); *Commonwealth* v. *Bryer*, 398 Mass. 9, 15-16 (1986).

2. *Cross-examination of defense witness Steven Crosby on the subject of his pretrial silence.* Crosby was Pina's friend and had known him since Crosby was thirteen years old. At the time of trial, Crosby was an inmate in the Plymouth County house of correction. He testified that while in jail Pina had spoken to him about this case; that Pina had told Crosby that he owed the defendant money and that during an argument outside Maggie's Pub, Pina had drawn a knife and had slashed the defendant over the eye, that during the ensuing scuffle the defendant had ended up with the knife, and that Pina "got stabbed."

Pina's statement to Crosby came to the defendant's attention, according to Crosby, when the latter's attorney was interviewing Crosby in the visiting room at the Plymouth County house of correction. On that occasion the defendant, his attorney, and Pina were returning from court. This prompted a conversation between Crosby and his attorney regarding the incident at Maggie's. Crosby's attorney and the defendant's attorney were from the same public counsel office, and the defendant's attorney learned that Crosby was willing to corroborate the defendant's story as to who had first drawn the knife.

The prosecution attempted to impeach Crosby's testimony by suggesting that since he knew of this exculpatory information many months before trial and had said nothing until the second day of the trial, his pretrial silence was inconsistent with

his trial testimony. Although "a citizen ordinarily has no legal obligation to offer exculpatory information to law enforcement authorities," sometimes it is natural to expect a witness to come forward to avoid a mistaken prosecution of a friend or relative. *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 295 (1981). In those circumstances, the silence of a witness "is akin to a witness's 'prior inconsistent statement,' and, therefore, has probative value." *Id.* at 296. To impeach in this manner, the prosecution, however, must establish "that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so." *Commonwealth* v. *Egerton*, 396 Mass. 499, 507 (1986), quoting from *Commonwealth* v. *Brown*, 11 Mass. App. Ct. at 296-297.

Through its cross-examination of Crosby, the Commonwealth elicited that Crosby knew of the charges pending against the defendant, that he had the opportunity to speak with the defendant, and that he did not reveal the exculpatory information to him. It is less clear whether Crosby knew of the pending charges in sufficient detail to know that the story Pina had told him was inconsistent with Pina's account to law enforcement authorities of the events of that morning. Crosby, however, admitted to having knowledge which would have helped the defendant.

There was no indication that the defendant or his attorney had asked Crosby not to reveal information he possessed. More important, there was no showing that Crosby had a reason to tell this exculpatory information to the defendant or to law enforcement authorities. To the contrary, Crosby was, as indicated earlier, Pina's long-time friend. While Crosby stated that he wanted to be a good citizen, this was elicited only after the Commonwealth had thrice asked Crosby whether it was correct that he had had this knowledge for the last four or five months and "suddenly decided at the very last minute to come forward and tell the jury about what Eddy Pina supposedly told [him]."

Crosby testified that he liked to mind his own business, that he had not known the defendant prior to the incident, that he had met him in jail, and that he had never discussed the case with him.

As the Commonwealth failed to lay the requisite foundation to impeach Crosby, see *Commonwealth* v. *Egerton*, 396 Mass. at 507, the judge should not, over the defendant's objection, have allowed the prosecutor to question Crosby about his prior silence. The prosecutor also improperly commented on Crosby's sudden revelation and previous silence during his closing. The error, however, was harmless. "A defendant challenging the judge's ruling in [this] regard has the burden of showing an abuse of discretion and resulting prejudice." *Commonwealth* v. *Egerton*, 396 Mass. at 507.

The defendant argues that where, as here, the parties have conflicting stories, credibility is crucial, and the improper impeachment of Crosby prejudiced his case. Even assuming, however, that the jury believed the defendant's version of who drew the knife first during the Maggie's Pub incident, they were unlikely to consider the defendant to have been acting in self-defense in circumstances where the defendant, himself, admitted that he hit Pina with the butt of the knife while he was on top of Pina in front of Maggie's Pub, particularly since the defendant was some six inches taller and weighed sixty pounds more than Pina.[1]

3. *Cross-examination of Crosby on pending charges against him.* Before commencing his cross-examination of Crosby, the prosecutor approached the bench and informed the judge that he intended to examine Crosby about the charges on which he was being held. Defense counsel objected on the ground that the pending charges were unrelated to the instant case. The judge, however, ruled that he would allow questioning to de-

---

[1] During their deliberations, the jury posed a question which suggested to defense counsel that the hitting of Pina with the knife at Maggie's Pub was the basis for the defendant's conviction of assault and battery with a dangerous weapon. While we do not rely on the question for our result, it affords support to our conclusion that the defendant was not prejudiced.

termine Crosby's motive, bias, or other reason which had led him to come forward and testify at the last minute.

Based on this ruling, the prosecutor elicited evidence that Crosby had been incarcerated for four months, that he had spoken twice to Pina about the incident, both times while in jail, and that certain of Crosby's prison rights had been rescinded. The prosecutor ended his cross-examination by asking, "By the way, isn't it true that you're being held on a charge of aggravated rape?" Crosby answered, "No." No further questions were asked of Crosby by the prosecutor. During his closing, the prosecutor argued that Crosby was biased against the Commonwealth because he was being held in jail on a charge of aggravated rape.

The defendant did not object to the prosecutor's last question, but, in view of the judge's preliminary ruling on bias, he may have been warranted in concluding that an objection would have been to no avail and, indeed, might have lent additional import to the testimony. See *Commonwealth* v. *Palmarin*, 378 Mass. 474, 477 (1979).

The cross-examination should not have been permitted. See *Commonwealth* v. *Smith*, 26 Mass. App. Ct. 673, 675-678 (1988), and authorities cited.[2] As we recently stated in that case, "the idea that an arrest or accusation must surely inculcate within the accused a generalized bias against the government is too tenuous to justify the tarnishing of a defense witness and, by derivation, the defense." *Id.* at 678. Only if the facts suggest particularized bias — for example, "if the accusation against the defense witness grew out of the same episode which led to the charge for which the defendant is standing trial" — may cross-examination concerning the charges be permitted in the discretion of the judge. *Id.* at 678 & n.1. No facts as to particularized bias have been shown here.

Nevertheless, we think that the errors, whether taken singly or together, were harmless when the trial is looked at as a whole, see *id.* at 678, and did not affect the jury's verdict.

---

[2] The trial judge did not have the benefit of *Commonwealth* v. *Smith*, which was decided after the trial in this case.

4. *Prosecutor's argument.* The prosecutor did not stick to the evidence at trial. In closing, without any testimony or other evidence to substantiate his statement, he referred to Crosby as "being held on a charge of aggravated rape." Crosby, it will be recalled, had answered, "No," when asked whether he was being held on such a charge.[3]

In describing the blow to Pina, the prosecutor stated that the defendant had "whacked" Pina on the head with the butt of the knife "hard enough to cause a laceration, which is detailed in the medical reports, by the way. Hard enough to open up Chub Pina's skull." The hospital report described the injury as a "2 cm. superficial straight laceration on the frontal scalp."

The prosecutor also stated that Crosby and the defendant were cellmates. This was the only misstatement to which the defendant objected. He promptly interrupted the prosecutor, who corrected his remark and admitted that Pina and the defendant were only in the same cell block. Thus, this error was immediately corrected.

We think the misstatements by the prosecutor[4] did not create a substantial risk of a miscarriage of justice and that the strength of the evidence, together with the charge and other cautionary language to the jury that they were the fact finders and that closing arguments were not evidence, should preserve the conviction in spite of the errors. As we have already recounted, the defendant, a man six inches taller and sixty pounds heavier than the victim, admitted that he hit the victim with the butt of the knife while on top of him. The prosecutor's argument, while it deserves criticism, did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 416 (1978).

---

[3] The prosecutor has filed a motion to expand the record to include an indictment of Stephen Crosby on a charge of rape of a child under sixteen. We deny the motion, but recognize that the prosecutor's misstatement of the evidence may have been inadvertent.

[4] We see no error in the prosecutor's argument that the defendant suffered the cuts to his eye and his hand from his fifteen-foot jump to a cement surface. This was a plausible inference from the testimony. See *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 884 (1984).

5. *Ineffective assistance of counsel.* a. Pointing to the three separate incidents when the defendant could have been found by the jury to have struck or s'.abbed Pina, the defendant claims it was crucial for counsel to have limited the Commonwealth's proof to one of the three. Counsel's failure to file a request for a bill of particulars, it is urged, was conduct that fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant fails to recognize, however, that, even if a request for a bill of particulars had been filed, the Commonwealth would not have been required to elect the act of assault on which it relied to prove the charged offense. *Commonwealth* v. *Keevan*, 400 Mass. 557, 565 (1987). "Where a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways . . . . Then the defendant should be convicted if it is proved that he committed the crime in any of those ways." *Ibid.*, quoting from *Commonwealth* v. *Dowe*, 315 Mass. 217, 219-220 (1943).

b. The defendant also claims that counsel should have sought a specific unanimity instruction. As set forth in the margin,[5]

---

[5] At one point the judge stated:

"You have to evaluate the witnesses here, study whatever exhibits were introduced, take the conflicting testimony from various people, and determine and figure out among yourselves what did happen this particular night, whether it was one fast developing sequence of events, or did it take place over a little longer period of time, as a result of which there were maybe a couple of individual incidents that occurred, and if so, did something happen during each of these incidents."

Later, in discussing self-defense, he charged:

"And when you get to determine this, I think you're going to have to try and determine when did particular things happen. For example, you can't isolate or break up the series of events and say, well some of the elements happened now and maybe another element happened later. You've got to find all of the elements occurred at the same time.

"So, if you're getting to the element of self-defense, that's got to occur at the same time that the elements of the — kind of what I would call maybe the affirmative elements of the crime that we've

the judge made references to the series of acts and also stated that all the elements of the crime "have to occur at the same moment, the same time, not — they can't be spread over a period of minutes or something."

This explanation may well have sufficed as a unanimity instruction. In any event, since the Commonwealth introduced evidence of all the elements of the crime on each of the three occasions, the failure to request the instruction did not deprive the defendant of a substantial ground of defense. Cf. *Commonwealth* v. *Keevan*, 400 Mass. at 567, holding that the omission of a specific unanimity instruction did not create in that case any substantial risk of a miscarriage of justice. Cf. also *Commonwealth* v. *LeMar*, 22 Mass. App. Ct. 170, 173 (1986).[6]

c. While counsel may not have used the term self-defense, self-defense was clearly an issue before the jury, and the judge explicitly charged on both self-defense and accident. "Given the judge's demonstrated awareness of the [self-defense] question and the submission of the issue to the jury for consideration, we cannot say that counsel's failure [to argue self-defense more fully] deprived the defendant of [that] defense." *Commonwealth* v. *Bryant*, 390 Mass. 729, 750 (1984).

d. The effects of the errors in the questioning of Crosby and in closing argument have already been discussed. We do not think counsel's failure to object deprived the defendant of a substantial ground of defense.

In rejecting the defendant's claims of ineffective assistance of counsel, we note that the trial judge in his memorandum on the defendant's motion for a new trial commented, "His trial counsel was experienced and did a far better job than most in cross-examining witnesses and conducting the defense." Nothing

---

mentioned to you all have to occur at the same moment, the same time, not — they can't be spread over a period of minutes or something."

[6] We do not reach the question whether the standard of a substantial risk of a miscarriage of justice differs from the standard of depriving the defendant of a substantial ground of defense. In any event, the failures of counsel did not meet either.

in this record suggests that this appraisal of counsel's performance was unwarranted.[7]

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

[7] The defendant's statement that counsel was ineffective for failing to pursue an insanity defense does not qualify as argument within the meaning of Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).