COMMONWEALTH vs. KRIS N. FERREIRA.

No. 09-P-1102.

Bristol. May 3, 2010. - September 14, 2010.

Present: RAPOZA, C.J., CYPHER, & MILKEY, JJ.

*Identification. Evidence,* Identification, Photograph. *Practice, Criminal,* Assistance of counsel, Argument by prosecutor. *Constitutional Law,* Assistance of counsel.

A trial court judge did not err in denying a criminal defendant's motion for a required finding of not guilty on an indictment charging unarmed robbery of a person sixty years of age or older, where the Commonwealth, proceeding on a theory of joint venture, presented sufficient evidence that the defendant was the second of two assailants, and where that evidence did not deteriorate at the close of all the evidence. [677-679]

A criminal defendant failed to provide a proper record for review of his claim on direct appeal that he had received ineffective assistance of counsel during trial. [679-680]

At a criminal trial, the prosecutor's improper use, in closing argument, of a statistical basis in support of the victim's photographic identification of the defendant as an assailant did not create a substantial risk of a miscarriage of justice, where, when viewed in the entirety of the argument, the prosecutor's improper statements did not detract from the jury's duty to follow the judge's instructions, which included proper instructions on identification and reasonable doubt. [680-682] MILKEY, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on January 18, 2007.

The cases were tried before *E. Susan Garsh, J.*

*Robert J. Galibois, II,* for the defendant.

*Tae-Yong Kim (Steven E. Gagne,* Assistant District Attorney, with him) for the Commonwealth.

CYPHER, J. The defendant, Kris N. Ferreira, was convicted by a Superior Court jury in April, 2008, of unarmed robbery of a person sixty years of age or older, G. L. c. 265, § 19(*a*); and, following a bench trial, was found guilty of being an habitual offender. The defendant argues that the trial judge erred in

denying his motion for a required finding of not guilty, and that he received ineffective assistance of counsel during his trial. He also claims that the prosecutor exhibited prosecutorial misconduct in his opening statement, closing argument, and cross-examination impeachment of a defense witness. We affirm.

*Factual background.* A jury could find the following. On November 5, 2006, the victim was working a part-time job delivering pizza for Village Pizza & Seafood (Village Pizza) in the city of Fall River. He was sixty-one years of age at the time.

On this date, at around 7:00 P.M., the victim left Village Pizza to deliver a pizza to an address on June Street in Fall River. When he arrived, he parked his car and was walking up the street searching for the address when he heard a male voice say something to the effect of, "There he is."

The victim observed two males from twenty to twenty-five feet away. At trial, he described the men as follows: assailant number 1 as being approximately five feet, ten inches tall, weighing approximately 150 to 160 pounds, wearing a hooded sweatshirt with the hood on his head, and jeans; assailant number 2 as being five feet, ten or eleven inches tall, weighing 175 to 190 pounds, wearing a jacket and jeans.

The two men approached the victim, walking side by side, and then pushed him to the ground from behind. The victim fell to his knees, and ended up face down on his abdomen. The victim indicated at trial that he was pushed by the hooded assailant, while the jacketed assailant remained behind and to the side of the hooded assailant.

The victim believes that the jacketed assailant then said something along the lines of, "We don't want to hurt you. Just give us what's in your pockets, and we'll let you go." The hooded assailant put his knee on the victim's back, pulled out a paring knife, and showed it to him.

The hooded assailant, under instructions from the jacketed assailant, took $125 and a wallet from the victim, and they told him to stay on the ground for a couple of minutes. The victim heard them run away, and he got up. Next he heard a car start in the distance and drive off. He then went to a nearby residence on June Street to telephone the police.

Fall River police Officer Brett Kimball responded to the

scene, and after the victim provided descriptions of the event and the assailants, the officer went to Village Pizza to investigate, but was unable to obtain the telephone number from where the call for delivery had been received. Kimball then returned to the police station. Later that same evening, Officer Kimball returned to Village Pizza with two six-person photographic arrays of potential suspects.

The victim picked one suspect from each photographic array — Shawn Pacheco (as the hooded assailant), and the defendant (as the jacketed assailant) — as the two males who had robbed him. At trial, the victim claimed that he had been one hundred percent sure about his identification of the hooded assailant, but had been only eighty percent sure about his identification of the jacketed assailant. Also at trial, he could not be sure if the jacketed assailant was in the courtroom.

*Discussion.* 1. *Motion for a required finding of not guilty.* The Commonwealth proceeded on a joint venture theory, involving the defendant and Pacheco. Pacheco testified, after a grant of immunity, that he had robbed the victim with another man, not the defendant. The defendant argues that his motion should have been allowed because the evidence failed to identify him as the second assailant, questioning the police photographic array procedure from which the victim identified him, and pointing out that the victim was unable to identify him in the courtroom at trial. He also asserts that the Commonwealth relied on "extraneous evidence" of police testimony that the defendant and Pacheco often had been seen together.

Viewed according to *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), there was sufficient evidence that the second assailant was the defendant. The victim parked his car and walked along the street, looking for the address he had been given. He heard a male voice say, "There he is." He saw two young men come out from between two houses, and walk toward him. One of the men pushed the victim to the ground and took his wallet and money.

The victim identified both Pacheco and the defendant from photographic arrays prepared by the police. The arrays were presented to the victim at Village Pizza within one and one-half

hours of the incident.[1] The victim had no hesitation in selecting the photograph of Pacheco, and stated that he was eighty percent sure of his choice of the photograph of the defendant. Cf. *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 441 (2005) ("Prior identification evidence is of substantive value, even in the absence of any in-court identification, because it has occurred under nonsuggestive circumstances and closer in time to the offense"). To the extent that there were any inconsistencies or contradictions in the victim's testimony or identifications,[2] they only would affect the weight and credibility of the evidence, which are matters within the jury's province to resolve. Compare *Commonwealth* v. *Platt*, 440 Mass. 396, 401 (2003).

There was testimony that the police were familiar with both Pacheco and the defendant, and that the two frequently had been seen together. That testimony was admissible, to be considered with other evidence bearing on the issue of the second assailant's identity. The defendant's motion for a required finding properly was denied.

Because there was contradictory evidence that the defendant

---

[1] There is no merit in the defendant's assertion that trial counsel should have objected to the admission in evidence of the photographic arrays because they constituted identification based on hearsay resulting from a conversation between two police officers. There is nothing in the testimony of Officer Kimball, who prepared the photographic arrays, indicating that any hearsay was a factor in his preparation of the arrays.

Officer Kimball testified that he obtained photographs for the arrays through a computer search by entering the victim's physical descriptions of the assailants.

Officer Kimball also testified that, when he presented to the victim the two arrays of six photographs each, the victim followed his instructions to look through the photographs twice before making a selection, that he "immediately" identified Pacheco in the first array, and that he "immediately" selected the photograph of the defendant in his second look at the second array.

[2] The defendant asserts that the victim could not see all of the second assailant's face, misleadingly describing him as remaining behind the first, "who, in turn, was behind the [victim]." The defendant overlooks evidence that the two approached the victim, side by side, from twenty to twenty-five feet away until they were within an arm's length of him. Then, Pacheco pushed the victim to the ground from behind, while the second assailant stood beside or behind Pacheco. Although the victim testified that it was dark after sunset, he also stated that the street was not dimly lit. There is no indication in the record that the defendant challenged the victim's view of the two approaching, or his physical descriptions of them.

was not present at the incident — from Pacheco, as well as from Robert Dias and an alibi witness, Kristin Bennett, who both testified in the defendant's case — we consider whether at the close of all the evidence the Commonwealth's evidence deteriorated. We conclude that it did not. Contradictory evidence does not indicate deterioration, which occurs when the Commonwealth's evidence is "shown to be incredible or conclusively incorrect." *Commonwealth* v. *Nolin*, 448 Mass. 207, 216 (2007), citing *Commonwealth* v. *Pike*, 430 Mass. 317, 323 (1999). The defendant's renewed motion for a required finding at the close of all the evidence properly was denied.

2. *Ineffective assistance of trial counsel.* The defendant makes several assertions that trial counsel was ineffective, without providing the proper record for review in this direct appeal. See *Commonwealth* v. *Diaz*, 448 Mass. 286, 289 (2007) (such claims "should normally be raised through a motion for a new trial" with appropriate factual record, including "explanation by trial counsel for his actions"). Accordingly, we summarily dismiss his assertions as follows. The defendant asserts that trial counsel should have moved to suppress the photographic identification evidence. The defendant fails to make the showing required to dispute the identification procedures, or to argue that those procedures were defective. See *Commonwealth* v. *Watson*, 455 Mass. 246, 250 (2009) (to succeed in suppressing photographic identification, defendant must show that procedures employed were "unnecessarily suggestive" and "conducive to irreparable misidentification"). This argument advanced by the defendant also is addressed, *supra* and *infra*. There is no meaningful argument accompanying two one-sentence assertions that trial counsel should have objected to the Commonwealth's opening statement and closing argument. There is no merit in the defendant's assertion that the prosecutor "baited" Dias into disclosing that he was incarcerated during the trial. The judge promptly struck Dias's voluntary response that he was in jail, and instructed the jury to disregard the answer.[3] The defendant fails to show how a request for an instruction pursuant to *Commonwealth* v. *Bowden*,

---

[3] It was not error or misconduct for the prosecutor to impeach Dias by remarking that he faced charges with potential penalties of life sentences. See *Commonwealth* v. *Smith*, 26 Mass. App. Ct. 673, 678 (1988). Furthermore, the

379 Mass. 472, 485 (1980), would have accomplished anything materially better for the defense.

3. *Closing argument.* The defendant complains that the prosecutor improperly argued a statistical basis in support of the victim's photographic identification of the defendant as the second assailant. The prosecutor began by referring to defense counsel's argument that the victim's statement that he was "eighty percent sure" of his identification of the defendant was not sufficient to meet the standard of proof beyond a reasonable doubt. Defense counsel had stated: "[I]f you go by [the victim's] eighty percent, that's reasonable doubt. . . . If that's all we had to go on, that would be enough for reasonable doubt." That was not, the prosecutor stated, what the case was all about, and that the jury must decide whether the victim was "one hundred percent right."

The end of the prosecutor's closing argument was directed at the victim's identifications of Pacheco and the defendant from the photographic arrays presented by the police. The prosecutor emphasized that the victim had had a good opportunity to see the pair as they approached him on the street, and selected the photograph of each one from the arrays with little hesitation. Then, the prosecutor stated:

> "And who does he pick? . . . Two men who've been seen hanging around together . . . . The odds of picking two men out of two arrays with forty-nine different combinations who are that type, one out of forty-nine. Two percent. Two percent. What are the odds that [the victim] would have picked two different people, some other combination? Ninety-eight percent. I call that proof beyond a reasonable doubt."

The defendant claims that the "unfounded and purportedly mathematical" argument infringed on the jury's fact-finding role to determine the correctness of the identification of the defendant through the photographic array. While the prosecutor's enthusiasm for the victim's decisive selections of the photographs and his (the prosecutor's) attempt to rebut defense counsel's

---

judge gave a specific instruction properly limiting the jury's use of the pending charges. See *Commonwealth* v. *Daley*, 439 Mass. 558, 564 (2003).

argument is understandable, the probability-based argument was ill-founded. "The idea of reasonable doubt is not susceptible to quantification; it is inherently qualitative." *Commonwealth* v. *Sullivan*, 20 Mass. App. Ct. 802, 806 (1985), and cases cited. Moreover, as our time-honored standard states, and as the judge instructed: "[I]t is not sufficient to establish a probability, though a strong one arising from the doctrine of chances . . . ; but the evidence must establish the truth of the fact to a reasonable and moral certainty." *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). The selection of photographs is not comparable to the drawing of playing cards from a shuffled deck. The photographic identification process is designed to promote the objective identification of a suspect by means of a victim's perception and memory, subject to corroboration and challenge in the trial process.

"We consider the [prosecutor's] remarks in the context of the entire argument, and in light of the judge's instructions[4] to the jury and the evidence at trial." *Commonwealth* v. *Francis*, 450 Mass. 132, 140 (2007). There was no objection by the defendant, and no comment from the judge. The lack of objection by experienced counsel is some indication that the argument was not unduly prejudicial. See *Commonwealth* v. *Montez*, 450 Mass. 736, 748 (2008). The prosecutor's probability-based argument took about two pages of his eleven-page argument, where he principally argued that there was evidence corroborating the defendant's participation with Pacheco. He referred to Pacheco's plea hearing where he admitted to facts that he and the defendant had robbed the victim, arguing that Pacheco then changed his story at the within trial by claiming Dias was with him during the robbery.[5] Dias testified at trial that he accompanied Pacheco; the prosecutor argued in detail why neither Dias nor Bennett, the alibi witness, should be believed.

Viewed in the entirety of the argument, we think the prosecutor's

---

[4]The judge instructed that closing arguments are not evidence.

[5]The dissent points out, *post* at 686 n.7, that the judge instructed that what Pacheco said during the plea hearing was admitted only for impeachment purposes, and not for the truth of what was said. Nonetheless, during Pacheco's direct testimony, and in cross-examination, he stated that Dias was with him and "[n]ot Kris Ferreira." This was a sufficient basis for impeachment, but even if that is questionable, the issue was not raised during trial or on appeal.

probability assertions were recognized by the jury as hyperbole, and did not detract from the jury's duty to follow the judge's instructions, which included proper instructions on identification and the *Webster* definition of reasonable doubt. In the circumstances of this case, even if there was error in the prosecutor's closing argument, it did not create a substantial risk of a miscarriage of justice.

*Judgment affirmed.*

MILKEY, J. (dissenting). In my view, the prosecutor's reliance on probability theory to demonstrate proof beyond a reasonable doubt amounts to reversible error. I therefore respectfully dissent.

Appellate courts have long cautioned against the use of mathematical proof in criminal cases, and the admission of such evidence is "generally disfavor[ed]." *Commonwealth* v. *Gomes*, 403 Mass. 258, 274 (1988). "Courts have legitimately feared that statistics might be employed as a way 'to assign a number to the probability of guilt or innocence.' " *Id.* at 275, quoting from *People* v. *Collins*, 68 Cal. 2d 319, 330 (1968) (en banc). The reluctance to allow such proof "has stemmed largely from the fact that the probabilities on which the evidence depended were based on mere speculation or were characterized in such a way as to mislead or confuse the jury." *Id.* at 274. As set forth, *infra*, the probability argument that the prosecutor included in his closing raises all of these concerns.[1]

Although the majority effectively acknowledges that the prosecutor erred in seeking to rely on probability theory, I begin by examining the egregiousness of the error in order to show the extent to which it infected the case. Given that the victim was unable to make an in-court identification of the defendant, the Commonwealth's case was principally based on the fact

---

[1]Here, the Commonwealth inserted its probability argument in its closing, not through an expert witness. In some ways, this amplified the error: the Commonwealth was able to put the point before the jury without having to demonstrate any mathematical expertise and without being subjected to cross-examination. I do not view the standard instruction that closings are not evidence as sufficient to cure the problem, especially where the point was presented to the jury as a way of evaluating the evidence presented.

that, shortly after the robbery, the victim identified the defendant from a photographic array. According to the Commonwealth, the victim was shown two arrays of six photographs each, and also was provided a "none of the above" option.[2] The victim identified one person from the first array (Shawn Pacheco) as one of the two assailants, and identified the defendant from the second array as the other. In his closing argument, the prosecutor highlighted the close personal relationship between the two men, and then ended with the following flourish:

> "The odds of picking two men out of two arrays with forty-nine different combinations who are that type, one out of forty-nine. Two percent. Two percent. What are the odds that [the victim] would have picked two different people, some other combination? Ninety-eight percent. Do you call that coincidence? I call that proof beyond a reasonable doubt."

Fairly read, the quoted passage sought to convince the jury that they could be ninety-eight percent certain that the victim identified the right man. In this manner, the prosecutor clothed the photographic array evidence in a superficially powerful aura of mathematical proof.

The prosecutor's probability argument was central to the Commonwealth's case even though, as the majority notes, *ante* at 681, it "took about two pages of [the prosecutor's] eleven-page [closing] argument." Indeed, the extent to which the Commonwealth relied on probability theory is evident when the statements are viewed in context. The prosecutor began his closing by agreeing with defense counsel that "[i]f all we had in this case was [the victim] saying, 'I'm about eighty percent sure that this photograph is the person who robbed me,' you probably wouldn't be deliberating very long this morning. You'd

---

[2]The Commonwealth's portrayal of the photographic array process comes from the trial testimony of Fall River police Officer Brett Kimball. The victim himself had a very different recollection of the process (remembering that he was shown albums that each contained about thirty photographs). The Commonwealth expressly disavows this part of the victim's testimony, stating that "[b]y the time of trial, [the victim's] memory of the photo array procedure varied greatly from the procedure actually employed." This is but one of many examples of how the victim's recollection of what happened on the night he was robbed was understandably hazy.

go upstairs, you'd say eighty percent not high enough, not guilty, we're done." He proceeded to argue that it fell to the jury to "decide whether [the victim] is eighty percent right or one hundred percent right." In this manner, the Commonwealth put forward the jury's making an assessment of the mathematical odds as the fulcrum on which their verdict should turn. After reviewing the evidence, the prosecutor then offered his assessment of the mathematical odds as the capstone on which the jury could rely in finding an absence of reasonable doubt.

Scrutiny reveals the Commonwealth's own analysis of the probabilities to be nonsensical. If the chances of randomly picking the particular combination of men chosen was two percent, so too was the chance of randomly picking any other combination.[3] But the probability of someone randomly picking any given combination says nothing about the accuracy of that choice in identifying the perpetrator. Thus, for example, as the Commonwealth concedes in its brief, "a witness's selection of a suspect's photo from an array containing 100 photos would not necessarily render the odds of that selection being correct 99%." Despite acknowledging that such an argument would be "misleading" and "fallible," the Commonwealth continues to try to justify here what the prosecutor did. According to the Commonwealth, the prosecutor's argument was essentially accurate, because it was based on the extreme unlikelihood of someone randomly choosing a pair of close friends from the photographic arrays.[4]

Among many other problems with this argument is the absence of any evidence about the nature or strength of the relationships among the other men in the photographs. Thus, there was literally no basis upon which to calculate the odds of a person's

---

[3]The odds of one's selecting the "none of the above" alternative are not necessarily the same as those for selecting each of the six photographs shown. The Commonwealth appears to have assumed that these options are of equal probability, without explanation.

[4]The Commonwealth's probability argument rests on the close personal relationship between Pacheco and the defendant, and the fact that they often were seen together. Independent of the Commonwealth's misuse of probability, its constant reference to the defendant's ties to Pacheco comes at least dangerously close to relying on "guilt by association." See *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965); *Commonwealth* v. *Szemetum*, 3 Mass. App. Ct. 651, 653-654 (1975).

randomly selecting individuals from the photographic arrays who had a similarly close relationship. In an effort to address this problem on appeal, the Commonwealth digs its wheels deeper into the mud. Specifically, it offers the following hypothetical to demonstrate that it was "fair and reasonable" for the prosecutor to argue that the odds of randomly selecting the defendant were "practically infinitesimal":

> "Hypothetically, even had Pacheco's array contained a total of four individuals with whom the defendant was equally as close, the odds of the victim selecting the defendant's photo ($1/7$) *and* one of his four friends in Pacheco's array ($4/7$) would still be just 4-in-49 ($1/7$ x $4/7$), or a mere eight percent."

But by the time of the defendant's trial, Pacheco's own guilt was not in doubt. If, as the Commonwealth hypothesizes, four of Pacheco's friends were among the other six individuals in the second array, then the probability of someone randomly choosing a friend of Pacheco's, far from being "practically infinitesimal," is actually more likely than not.[5]

Even had the data been there to substantiate the specific odds proffered by the prosecutor, the argument still would have been next to meaningless. The low probability that one would randomly choose the defendant from the second array simply does not establish the strength of the victim's identification. The Commonwealth's argument was therefore fundamentally flawed in theory as well as practice.

Of course, the fact that the Commonwealth erred does not by itself establish the defendant's prejudice, and any effect of the error might well have been sufficiently diluted if the Commonwealth had had a strong case.[6] But the Commonwealth's

---

[5]The fact that the Commonwealth's appellate counsel falls into some of the same traps as the trial prosecutor underscores the seductiveness of such mathematical fallacies, as well as the dangers inherent in their use.

[6]The majority suggests that the absence of contemporaneous protest from either defense counsel or the trial judge shows that they did not view the probability argument as unfairly prejudicial. Even to the extent such an inference is possible, their silence might simply indicate that the superficial plausibility of the prosecutor's argument masked its profound flaws. See *People* v. *Collins*, 68 Cal. 2d at 331 (noting that "few defense attorneys, and certainly few jurors, could be expected to comprehend [the] basic flaw in the prosecutor's [probability-based] analysis").

evidence was hardly overwhelming: the victim could not identify the defendant in the courtroom, the defendant provided an alibi witness, and another man confessed to the crime. Proof of the defendant's guilt was based almost entirely on the victim's identification of the defendant from the photographic array,[7] and there were several factors that potentially call into question the accuracy of that identification.[8] The victim's ability to get a good view of the second assailant during the crime faced a number of challenges, including darkness and the fact that the second assailant was wearing a baseball cap pulled down to his eyes. In addition, during much of the time he was being robbed, the victim was flat on his abdomen with his face against the ground and Pacheco on top of him. As the victim himself acknowledged, even before he was on the ground, he had a relatively limited opportunity to view the second assailant. Specifically, after describing his ability to observe the first assailant right before he was pushed to the ground, the victim testified: "Him [the second assailant] I couldn't see as well. So he must have been behind me." Not surprisingly, the victim was significantly less certain about his identification of the defendant as the second assailant, than of Pacheco as the first. He identified Pacheco "almost right away," explaining, "I saw him a lot more, so he was much more easier to identify." In contrast, he had to examine the second array "a couple of times" before selecting the defendant's photograph and telling the police, "I think that's him, but I'm not a hundred percent sure."

In sum, the Commonwealth had a relatively thin case that ultimately depended on the jury's being convinced that the victim's identification of the defendant from the photographic array provided proof beyond a reasonable doubt. With superficially powerful, but ultimately nonsensical, mathematical "proof," the

---

[7]The majority, *ante* at 681, makes reference to the fact that during his own change of plea hearing, Pacheco "admitted to facts that he and the defendant had robbed the victim." Leaving aside the fact that the identity of the second assailant was not material to Pacheco's own admission of guilt, the testimony about what he said during the plea hearing was admitted at the defendant's trial only for impeachment purposes, not as "establishing the truth of anything this witness may have said in a prior proceeding."

[8]I do not mean to suggest that the proof was insufficient as a matter of law. I agree with the majority that whether the proof was sufficient in the face of the potential reasons for doubt was for the jury to decide.

prosecutor offered the jury assurance of the near infallibility of the photographic array process. As a result of the defendant's conviction, he is now serving a life sentence. In view of all of these factors, I believe that there is a substantial risk that justice has miscarried.