**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 17, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v
                        No. 116315

NETO ALAN LAYHER,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

Defendant appeals the judgment of the Court of Appeals affirming his conviction for one count of first-degree criminal sexual conduct, MCL 750.520b(1)(b)(ii), and two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(b)(ii).[1] We granted leave limited to whether the

---

[1]The trial court sentenced defendant to twenty to forty years imprisonment for the first-degree CSC conviction and to concurrent terms of eight to fifteen years imprisonment for each second-degree CSC conviction.

trial court erred so as to require reversal in allowing the prosecutor to cross-examine a defense witness concerning a prior charge for which he was acquitted.

We conclude that the overly broad holding of *People v Falkner*, 389 Mich 682, 695; 209 NW2d 193 (1973), which states "no inquiry may be made regarding prior arrests or charges against" a witness that did not result in a conviction, is inconsistent with precedent and with the approach to the admission of evidence that we have followed since the adoption of the Michigan Rules of Evidence.[2]  We hold, consistent with existing precedent and the Michigan Rules of Evidence, that a trial court may allow inquiry into prior arrests or charges for the purpose of establishing witness bias where, in its sound discretion, the trial court determines that the admission of evidence is consistent with the safeguards of the Michigan Rules of Evidence.

We conclude that evidence of the witness' prior arrest without conviction to show the witness' bias was admissible under MRE 402 and MRE 403.  The judgment of the Court of Appeals is affirmed and the defendant's conviction is upheld.

I

Defendant, Neto Layher, was convicted by jury over his general denial of three counts of criminal sexual conduct

---

[2]The Michigan Rules of Evidence were adopted by this Court on January 5, 1978.  402 Mich lxxxviii.

2

involving his minor niece, the complainant. During trial, all witnesses were sequestered.

In the summer of 1996, complainant was fifteen and staying with her grandmother, defendant's mother. Complainant, who is mentally slow, testified at trial that three incidents occurred sometime before July 5, 1996. During the first incident, defendant rubbed complainant's breasts and genitals, first over and then under her clothes, while she was sleeping in her grandmother's bedroom. Complainant testified that she did not tell anyone because she was scared. The second incident happened when she was sleeping on the floor in her grandmother's room while her grandmother and complainant's sibling slept in the bed nearby. Defendant woke her by touching her over her clothes in the same manner as before. He left the room and then returned again, this time touching her under her clothes as before. Defendant asked her if she would tell. Again, she testified that she said she would not because she was scared. The third incident occurred when complainant was lying on her grandmother's bed. No one else was in the room. She testified that defendant gave her five dollars because she was not going to tell and then took the money back. Defendant again began rubbing complainant under her clothes. During this incident, complainant testified that defendant penetrated her vagina with his finger.

Complainant and her siblings had, throughout their lives, been moved from the home of one family member to the next. As a result, none of the witnesses were able to testify with specificity regarding when the children were at one home or another. For example, complainant's grandmother testified that the children were not with her at the beginning of the summer of 1996, but, rather, were with her at the end of the summer. The grandmother's testimony was inconsistent with that of all the other witnesses.

Sometime after the incidents described above, complainant and her two siblings went to live with Karen Byrd, the girlfriend of another uncle. Complainant and Ms. Byrd testified that complainant told Ms. Byrd of the incidents. Ms. Byrd then contacted the authorities. Soon after the authorities became involved, complainant and her siblings were moved from Ms. Byrd's home to the home of Christine (Layher) Walton, an aunt.

While the children were staying with Ms. Walton, Robert (Bob) Ganger, who was working for defense counsel, was sent by defense counsel to investigate the case. Mr. Ganger testified that he was sent in response to a call defense counsel received saying that Ms. Walton and complainant wanted to talk to an attorney. It was not specified who made that call. Mr. Ganger first visited with Ms. Walton and then with Ms. Walton and complainant on two additional visits. Mr. Ganger

4

became the lead defense witness as a result of these conversations.

As a result of the conflict in testimony between Mr. Ganger and complainant, the prosecution sought to introduce the fact that Mr. Ganger had been tried and acquitted on the charge of criminal sexual conduct involving a child under the age of thirteen. The prosecution reasoned:

> My position is that is certainly relevant in this case to show bias. Bias is very important for the jury to hear. And this particular charge . . . is necessary for the jury to hear about because of this particular case and the fact that Neto Layher is charged with a criminal sexual conduct.
>
> I certainly think that that shows bias that he's going to try to assist another person who has been charged with the same thing he's been charged with, and obviously I would believe he would think wrongly accused of.

The trial court allowed the cross-examination to proceed. The Court of Appeals affirmed[3] the trial court's ruling on this evidentiary matter. We granted leave to appeal, limited to whether the trial court abused its discretion by allowing introduction of this evidence of Mr. Ganger's prior arrest and acquittal.

II

A

We review evidentiary decisions for abuse of discretion.

---

[3] 238 Mich App 573; 607 NW2d 91 (1999).

5

*People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998); *People v Bahoda*; 448 Mich 261, 289; 531 NW2d 659 (1995). The trial court's decision on close evidentiary questions cannot "by definition" be an abuse of discretion. *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982). However, where decisions regarding the admission of evidence involve preliminary questions of law such as whether a rule of evidence or statute precludes admissibility, our review is de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Logical relevance is the foundation for admissibility. *People v VanderVliet*, 444 Mich 52, 60; 508 NW2d 114 (1993). Logical relevance is defined by MRE 402 and MRE 401. MRE 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

As defined by MRE 401, "relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

B

The prosecutor introduced evidence of Mr. Ganger's past arrest and acquittal of criminal sexual conduct involving a

6

child less than thirteen to create an inference of bias on the part of Mr. Ganger in favor of defendant. Bias is a common-law evidentiary term used "to describe the relationship between a party and a witness . . . in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *United States v Abel*, 469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984).

In *Abel*, the United States Supreme Court addressed the issue of bias in the context of the Federal Rules of Evidence (on which the MRE are modeled). The defendant and a defense witness in that case belonged to the Aryan Brotherhood, a secret prison gang that encouraged members to commit perjury, theft, and murder to protect each other. The *Abel* Court concluded that evidence showing a witness' membership in the gang was sufficiently probative of bias to warrant its admission. The Court first noted that the FRE govern the admissibility of such evidence, but that, while the rules address impeachment of a witness by character evidence and conduct (FRE 608), by evidence of a criminal conviction (FRE 609), and by showing of religious beliefs or opinion (FRE 610), they do not expressly address impeachment for bias. *Id.* at 49. The Court concluded that possible bias of a witness is a permissible basis of impeachment under the FRE despite the omission of any express treatment of impeachment for bias.

7

After reiterating the nature and admissibility of relevant evidence under FRE 401 and FRE 402, the Court stated at p 51:

> A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.

> * * *

> We think the lesson to be drawn from all of this is that it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption. . . .

The Court explained the meaning of "bias" as follows:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. [*Id.* at 52.]

Addressing first the relevance inquiry of FRE 401, the Court concluded that evidence of the defendant's and defense witness' membership in the Aryan Brotherhood "supported the inference that [the witness'] testimony was slanted or perhaps fabricated in [the defendant's] favor. A witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *Id*. Having found the evidence relevant, the Court then addressed whether the

8

prejudicial effect of this evidence substantially outweighed its probative value under FRE 403.  The Court noted that the trial court had taken reasonable precautions (not permitting the impeachment witness to mention the gang by name, and giving a limiting instruction concerning the use of the testimony) and concluded that these precautions ensured that "the admission of this highly probative evidence did not *unduly* prejudice the respondent."  *Id.* at 55.  The Court accordingly found no abuse of discretion in the trial court's decision to admit the impeaching testimony.

We agree with the *Abel* Court that evidence of bias is "almost always relevant."  We have consistently reaffirmed our observation in *People v MacCullough,* 281 Mich 15, 26; 274 NW 693 (1937), that  "The interest or bias of a witness has never been regarded as irrelevant."  Indeed, as we note below, MRE 611(b) states that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility."

C

Regarding the admissibility of evidence concerning Mr. Ganger's prior arrest and acquittal, the trial court reasoned:

> This is cross-examination.  The Prosecutor is entitled to elicit information to support any claim that she may have that he's biased.  She certainly could argue on the one hand that the witness would be biased because he is employed, I would assume, by you and your client.  She could also and apparently seeks to do so, argue that as a result

9

of him being accused and acquitted of a crime which he claims he did not do of a very similar nature, that he is therefore biased in the Defendant's favor and presumably would color his testimony to help the Defendant, another person who he may believe would also be wrongly accused of the same crime.

We agree with the trial court that the evidence of Mr. Ganger's prior arrest and acquittal is logically relevant under MRE 401. As noted in *Abel, supra* at 52, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence that might bear on the accuracy and truth of a witness' testimony." Further, the trial court has wide discretion regarding admissibility of bias during cross-examination under MRE 611.[4] *Wischmeyer v Shanz*, 449 Mich 469, 475; 536 NW2d 760 (1995). Mr. Ganger's prior arrest for, and acquittal of, a charge involving the sexual abuse of a child supports the inference that Mr. Ganger would color his testimony in favor of defendant.

Nevertheless, logically relevant evidence may be excluded as "otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these

---

[4]MRE 611 provides in pertinent part:

(b) Scope of cross-examination. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination.

10

rules, or other rules adopted by the Supreme Court." MRE 402.[5] We must therefore consider whether, despite its logical relevance, the evidence of Mr. Ganger's prior arrest and acquittal should have been excluded.

### III

On appeal, defendant argues that the evidence should be excluded pursuant to the "rule" of *People v Falkner,* as well as by analysis under MRE 403 and MRE 609.

### A

First, Defendant argues that the admission of a witness' prior arrest without conviction violates the holding in *Falkner.* In 1973, *Falkner* held that

> in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction . . . . [*Id.* at 695.][6]

---

[5]As to whether *Falkner* is a "rule adopted by the Supreme Court" within the meaning of MRE 402, we need not decide, in the context of this case, whether that phrase applies to evidentiary "rules" established by decisions of this Court that predate the adoption of the MRE. As the United States Supreme Court in *Abel* assumed that the "rule" concerning impeachment for bias existed before the adoption of the FRE and continued to exist thereafter, we assume, for the purposes of this case, that the *Falkner* "rule" similarly continued to exist after the adoption of the MRE. *Abel, supra* at 51-52.

[6]*People v Rappuhn*, 390 Mich 266; 212 NW2d 205 (1973), relied on *Falkner* to hold the impeachment of a criminal defendant with evidence that he was previously charged with the same offense for which he stood trial warranted a new trial. *Rappuhn* stated that *Falkner* "speaks to the impeachment of any witness by use of an arrest record." *Rappuhn* at 271. In *People v Sanders*, 394 Mich 439, 440; 231 NW2d 639 (1975), this Court characterized *Falkner* as prohibiting the

11

This Court has not addressed whether *Falkner* precludes the use of evidence of a prior arrest or charge without conviction where offered for the purpose of showing witness bias.

The Court of Appeals acknowledged that *Falkner's* holding was "phrased broadly," but created an exception that would allow evidence of a prior arrest that did not result in a conviction where it "is not used to directly impeach the witness but to bring out the witness' bias or interest in the outcome of the case."  238 Mich App at 578, quoting  *People v Hogan,* 105 Mich App 473, 483; 307 NW2d 72 (1981).  The panel relied on Court of Appeals cases that it characterized as limiting *Falkner's* prohibition of the use of prior arrests for the purpose of impeaching a witness' credibility generally. *Hogan, supra,* and *People v Bostic,* 110 Mich App 747; 313 NW2d 98 (1981).

*Falkner* speaks generally about the impeachment and discrediting of witnesses by use of prior arrests.[7]  However, as we have observed above, *Falkner* did not address the well-

---

impeachment of a witness' credibility "by reference to an arrest which does not result in conviction."

[7]Specifically, *Falkner* dealt with the impeachment of two defense alibi witnesses with evidence of their prior convictions for receiving stolen property.  In the course of conducting this proper impeachment, the prosecutor also questioned the witnesses, without objection from the defendant, regarding the fact that these convictions represented reductions from the charged offense of unarmed robbery.  389 Mich 686-687.

12

established authority holding that cross-examination of a witness regarding bias is "always relevant." *MacCullough, supra.* Because *Falkner's* holding did not exclude impeachment regarding a witness' bias, we conclude that an express limitation of *Falkner* is warranted and reasonable. As explained in *Davis v Alaska*, 415 US 308, 316; 94 S Ct 1105; 39 L Ed 2d 347 (1974), quoting 3A Wigmore, Evidence (Chadbourn rev), § 940, p 775:

> A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is "always relevant as discrediting the witness and affecting the weight of his testimony."

*Falkner's* arguably absolute prohibition of the introduction of prior arrests without conviction conflicts with this Court's traditionally liberal view of cross-examination regarding witness bias. *Wilson v Stilwill*, 411 Mich 587, 599; 309 NW2d 898 (1981)("There is 'a general canon that on cross-examination the *range* of evidence that may be elicited for any purpose of discrediting is to be *very liberal*,'" quoting 3A Wigmore, Evidence (Chadbourn rev), § 944, p 778 (emphasis in original); *Hayes v Coleman*, 338 Mich 371, 381; 61 NW2d 634 (1953)("It is always permissible upon the cross-examination of an adverse witness to draw from him any fact or circumstance

13

that may tend to show his relations with, feelings toward, bias or prejudice for or against, either party, or that may disclose a motive to injure the one party or to befriend or favor the other").

A proponent's attempt to discredit a witness' testimony by showing that the witness may be biased in favor of, or against, a party or witness, is highly relevant, particularly in cases like the present, where that witness is effectively the sole source of evidence that contradicts the accuser. Denying the factfinder this type of evidence undermines the truth-seeking process.

We therefore hold that evidence of bias arising from past arrest without conviction is admissible if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice. MRE 403. Because prejudicial inferences may also be drawn from evidence of past arrests, "we instruct the bench and bar to employ the evidentiary safeguards already present" in the Michigan Rules of Evidence in determining the admissibility of a past arrest that did not result in conviction. *VanderVliet, supra* at 74.

B

We next apply this holding to the case before us. In doing so we address the defendant's argument that the admission of the evidence violated MRE 403. MRE 403 provides:

14

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Mr. Ganger's testimony on direct examination about his conversations with complainant and her aunt, Ms. Walton, contradicted the complainant's, and was offered by the defense to discredit complainant's accusations. Most significantly, Mr. Ganger testified that the complainant told him that the defendant had not sexually assaulted her and that she had been threatened by the prosecution with perjury if she refused to testify.

As a result of these and other contradictions, the prosecutor offered and was allowed by the trial court to pursue the following line of questioning on cross-examination of Mr. Ganger to impeach him:

> *Q.* Mr. Ganger, isn't it true that in 1992 you were charged with criminal sexual conduct first degree against a child under the age of 13?
>
> *A.* Yes, I was.
>
> *Q.* And you were tried for that, correct?
>
> *A.* Yes, I was.
>
> *Q.* And you were acquitted, is that correct?
>
> *A.* Yes, I was.
>
> *Q.* And you were aware when you went to speak to Olivia and Christine that Mr. Layher was charged with criminal sexual conduct in the first degree?

15

The prosecution's stated purpose for the admission of this evidence was to establish bias that may have affected both Mr. Ganger's manner of investigating the case and his testimony at trial.

The defendant contends that evidence of Mr. Granger's prior arrest and acquittal on charges of criminal sexual conduct against a child had "nothing to do" with the case against defendant. We disagree. Mr. Ganger, like defendant, denied that he was guilty of the charges. Conceivably, being wrongly accused of the same charge pending against defendant, Mr. Ganger would perhaps be overly vigilant in researching the case and consciously or unconsciously slant his testimony at trial. Furthermore, the fact of Mr. Ganger's acquittal on the charge lessens the prejudicial effect. We hold that the trial court did not abuse its discretion in determining that the probative value of Mr. Ganger's past arrest and acquittal on the same charge pending against defendant was not substantially outweighed by the danger of unfair prejudice. MRE 403.

C

Finally, the defense argues that admission of Mr. Ganger's prior arrest and acquittal violated MRE 609. We disagree. MRE 609 provides for the impeachment of witnesses by evidence of convictions of crimes containing elements of dishonesty or false statement or crimes containing an element

16

of theft with certain conditions. MRE 609 only applies to the use of past *convictions*; it does not address the use of past arrests that do not result in convictions for the purpose of showing a witness' bias. We therefore reject and need not further address the defense argument that MRE 609 precluded admission of past arrests that do not result in conviction.

## IV

For the reasons stated, the judgment of the Court of Appeals and the defendant's conviction are affirmed.

CORRIGAN, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 116315

NETO ALAN LAYHER,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I agree with the majority that, in appropriate circumstances, trial courts may admit evidence of a prior arrest not resulting in conviction for the purpose of establishing witness bias. I agree, also, that neither *People v Falkner*[1] nor MRE 609 bars this evidence, and that an analysis of whether it is admissible is governed by MRE 401 and MRE 403.

I write separately because I believe this Court should give further guidance about when prior arrests are admissible

_____

[1] 389 Mich 682; 209 NW2d 193 (1973).

to show bias. I would require that, before evidence of prior arrests is admitted, there must be a showing that a particularized bias exists. Also, there must be a reasonable degree of probability that the earlier arrest caused the witness to be biased. Such a holding would assist trial judges in analyzing whether to admit evidence of prior arrests to show bias and protect against abusive use of arrests on cross-examination.

Moreover, I disagree with the majority's conclusion that the trial judge did not abuse his discretion in admitting evidence of Mr. Ganger's past arrest. I would conclude that the trial judge's failure to weigh the challenged evidence's probative value against its danger of prejudice constitutes an abuse of discretion. Because it appears that the error in this case resulted in a miscarriage of justice, I would reverse the Court of Appeals decision. Accordingly, I respectfully dissent.

## I. The Admissibility of Past Arrests to Show Witness Bias

As the majority recites, evidence of a past arrest may be admitted, in appropriate circumstances, to show witness' bias. And, as *United States v Abel* states,[2] proof of bias is often relevant because "the jury, as finder of fact and weigher of

---

[2]469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984).

credibility, has historically been entitled to assess all evidence which may bear on the accuracy and truth of a witness' testimony."

However, the decision to allow evidence of past arrests that did not result in convictions is an ominous one.[3] First, there is a seemingly endless series of circumstances under which bias could be inferred. See 3A Wigmore, Evidence (Chadbourn rev), § 949, p 784. Also, as the majority admits, prejudicial inferences may be drawn from this type of evidence. See slip op at 16. Thus, the decision to admit past arrests should be undertaken with great caution.

More importantly, admitting evidence of one's past arrests may have the regrettable effect of deterring witnesses from testifying.[4] This would represent as significant a hindrance to the truth-seeking process as would a rule precluding bias evidence altogether.

For these reasons, I find inadequate the majority's simple instruction that the bench and bar should "employ the evidentiary safeguards already present" in the Michigan Rules

[3]See *Carolina v State*, 839 P2d 663, 666 (Ok Crim App, 1992), noting the multiple concerns associated with using prior arrests to show bias.

[4]See *State v Taylor*, 498 SW2d 614, 619 (Mo App, 1973) (McMillian, J., concurring); cf. *State v Cadena*, 9 Ariz App 369, 371-372; 452 P2d 534 (1969), acknowledging that the potential effect of introducing a witness' prior bad acts is that it may discourage witnesses from testifying.

of Evidence when analyzing the admissibility of past arrests to show witness bias. Slip op at 16. Let it be clear that I agree that MRE 401[5] and MRE 403[6] are the guiding principles to be used to determine the admissibility of prior arrests to show bias. However, considering the significant concerns associated with admitting them, further direction is warranted.

I would require that, before trial judges admit evidence of earlier arrests to show bias, they find the existence of a particularized bias.[7]

I would require, also, that trial judges find that a reasonable degree of probability exists that the evidence of the earlier arrest caused the witness to be biased. As the court in *Smith* observed, "[i]n those cases in which courts

---

[5] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[6] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[7] An example of particularized bias arises where, for example the accusation against the defense witness "grew out of the same episode which led to the charge for which the defendant is standing trial." See *Commonwealth v Smith*, 26 Mass App 673, 678, n 1; 532 NE2d 57 (1988). See also *State v Lewis,* 328 So 2d 75, 79 (La, 1976), stating that the witness' bias is admissible where it is "direct or personal, rather than indirect or general in nature."

4

have countenanced examination about prior arrests or pending charges to suggest bias on the part of the witness, there has generally been a link between the witness's entanglement with law enforcement and the main case on trial." *Id*. at 676.  The court in *Carolina* stated that "there must be a nexus between the arrest of the witness and the conclusion of bias . . . ." *Carolina, supra* at 666.[8]

These two directives would provide needed assistance to trial judges called upon to make the difficult determination whether to admit evidence of past arrests. More specifically, it would help trial judges determine the probative value of the proffered evidence and whether that value is substantially outweighed by the danger of unfair prejudice. It would also lessen the occurrence of unrelated collateral attacks on witnesses, while keeping the focus of trials on the truth-seeking process.[9]

---

[8] See, e.g., *State v Moynahan*, 164 Conn 560, 600-602; 325 A2d 199 (1973), holding that there was no error where the prosecutor inquired about a witness' prior arrest.  The arrest stemmed from the same investigation and involved the same type of criminal behavior and the same informer as that pertaining to the defendant's trial.

[9] This opinion should not be construed as advocating a heightened standard for admitting prior arrests to show bias. The directives articulated above are not meant to be interpreted as inconsistent with MRE 403. Rather, they are given to (1) protect against misuse of this subject of cross-examination, and (2) provide an enlightened basis for the trial court's determination of relevance and its decision
(continued...)

5

These directives would be especially helpful where, as here, a witness' prior arrest is unrelated to the factual circumstances that gave rise to the trial at which he is testifying. I do not deny the possibility that evidence of an earlier arrest may be properly admitted in this scenario.[10] However, if the evidence creates merely a remote inference of bias, it should be excluded.  Compare *Dardi*, *supra* at 336, with *Gaston v State*, 451 NE2d 360, 365 (Ind App, 1983).

---

[9](...continued)
whether to exclude evidence under MRE 403. In the analogous context of MRE 404(b) evidence, this Court has given directives for similar reasons. See *People v VanderVliet*, 444 Mich 52, 74, 89, n 51; 508 NW2d 114 (1993); *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998), stressing that the relationship between the proffered MRE 404(b) evidence and the ultimate fact sought to be proven must be "closely scrutinized." In *Crawford*, we gave this directive in recognition of the fact that determining the admissibility of other acts evidence is often difficult. See also *People v Sabin* (*After Remand*), 463 Mich 43, 63; 614 NW2d 888 (2000), clarifying the degree of similarity required in order to admit evidence based on the theory of common plan, scheme, or system, under MRE 404(b).

[10]See, e.g., *State v Sweeney*, 443 So 2d 522, 529-530 (La, 1983), where the prosecutor properly inquired into the prior arrest of the witness.  The witness' prior arrest had been made by the same officers who arrested and testified against the defendant; *United States v Dardi*, 330 F2d 316, 336 (CA 2, 1964), noting that where a prior arrest may have embittered a witness so as to motivate her testimony in a particular manner, the evidence would be relevant; *Waters v State*, 360 So 2d 358, 365-366 (Ala Crim App, 1978), there was no error where the prosecutor cross-examined a defense witness about an incident where she was arrested together with defendant, even though the arrest was for a crime unrelated to that prosecution.

6

In *Dardi*, a witness, Brann, testified for the government. Thereafter, the defense called McCollom, who testified that Brann's reputation for veracity in Switzerland was "just as poor as it could possibly be." *Id at 336.* On cross-examination, the prosecution asked McCollom whether there was an outstanding warrant against McCollom in Switzerland for embezzling $50,000. That question fairly probed the likelihood that McCollom harbored a bias against Brann, because Brann had revealed information that led to the embezzlement charge. In *Gaston* there was a prosecution for dealing in a controlled substance. A cross-examination of the defendant's alibi witness, Cruse, regarding Cruse's prior arrest for marijuana possession was found to be improper. The Court reasoned that there was no nexus connecting the fact of the arrest and the conclusion of bias.[11]

This case is of the type that presents the greatest challenge to determining the admissibility of prior arrests. I believe that the steps I have articulated would greatly assist trial judges.

---

[11]See also *Lewis*, *supra* at 79-80, holding that cross-examination of a defense witness directed at whether his brother had been arrested for an unrelated offense was too remote and, thus, improper. The Court explained that any bias that may have resulted from the witness' arrest was "too remote" and involved "too collateral an issue" to be admissible on a bias theory.

## II. The Trial Court's Abuse Of Discretion

The majority holds that "the trial court did not abuse its discretion in determining that the probative value of Mr. Ganger's past arrest and acquittal on the same charge pending against defendant was not substantially outweighed by the danger of unfair prejudice." Slip op at 18. I disagree.

This court reviews evidentiary decisions for an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). The term "discretion" involves "'the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *People v Talley*, 410 Mich 378, 387; 301 NW2d 809 (1981),[12] quoting *People v Williams*, 386 Mich 565, 573; 194 NW2d 337 (1972).

Here, the trial court, over defense objection,[13] admitted evidence of Mr. Ganger's prior arrest. It articulated its rationale as follows:

> All right. Well, the Court would rule that the evidence is relevant and it's probative and the

---

[12]Partially overruled on other grounds *People v Kaufman*, 457 Mich 266, 276; 577 NW2d 466 (1998)

[13]In objecting, defense counsel argued that no exception to the Michigan Rules of Evidence supported the admission of the challenged evidence. He urged that the evidence served merely to suggest to the jury that Mr. Ganger was "a bum." Furthermore, defense counsel argued that the evidence should not come in until there was a showing that "[Mr. Ganger has] actually got some bias . . . ." Thus, the objection preserved the issue whether the prior arrest was admissible under MRE 403. The prosecutor has not argued otherwise.

8

issue is whether or not the witness—whether a witness, as in all witnesses' testimony, is whether the witnesses' testimony is credible and should be believed.

This is cross-examination. The Prosecutor is entitled to elicit information to support any claim that she may have that he's biased. She certainly could argue on the one hand that the witness would be biased because he is employed, I would assume, by you and your client. She could also and apparently seeks to do so, argue that as a result of him being accused and acquitted of a crime which he claims he did not do of a very similar nature, that he is therefore biased in the Defendant's favor and presumably would color his testimony to help the Defendant, another person who he may believe would be also wrongly accused of the same crime.

It's not being offered under [MRE] 609. It's not being offered to impeach his credibility because he was convicted of a crime. It's being offered to show bias for a very specific purpose which the Court would rule is a legitimate purpose and it is relevant and it is material and it is probative and I will allow it.

My review of the record below persuades me that the trial judge failed to conduct any type of MRE 403 balancing analysis.[14] Although the trial judge discussed the challenged evidence's probative value and relevance, there is no

---

[14]By explicitly weighing the MRE 403 factors, trial courts maintain the appearance of justice by showing the parties that the dictates of the law were recognized and followed. It also facilitates appellate review. See *United States v Johnson*, 820 F2d 1065, 1069 (CA 9, 1987); *United States v Robinson,* 544 F2d 611, 616 (CA 2, 1976), aff'd en banc on rehearing 560 F2d 507 (CA 2, 1977), stating that Federal Rule of Evidence 403 (after which MRE 403 is modeled), was designed principally to promote correct factual determinations in individual cases and actual and perceived fairness in the judicial process.

indication that he considered its prejudicial effect.[15] Consequentially, there is nothing in the record supporting the conclusion that the trial judge weighed the danger of unfair prejudice associated with the challenged evidence against its probative value.[16]

Therefore, I find erroneous the majority's conclusion that the probative value of Mr. Ganger's past arrest and acquittal was not substantially outweighed by the danger of unfair prejudice. The record establishes that the trial court never made a determination to that effect.[17] Thus, I would hold

---

[15]I do not suggest that trial judges must state magic words in order for their MRE 403 analyses to survive appellate scrutiny. However, there should be some indication on the record that the trial judge conducted the proper inquiry. Compare, *State v Micko*, 393 NW2d 741, 745 (ND, 1986), finding error where the record revealed that the trial judge failed to make the essential balancing required of him under North Dakota Rule of Evidence 403; with *United States v Merriweather*, 78 F3d 1070, 1079, n 1 (CA 6, 1996), reluctantly finding no error requiring reversal where the record supported the conclusion that the district court implicitly held that the balance under FRE 403 favored admission; however, the court reiterated that district courts should make an express determination under FRE 403.

[16]Furthermore, there is no indication that the trial court took any reasonable precautions to lessen the prejudicial effect of the evidence. Cf. *Abel*, *supra* at 55, where the district court admitted evidence that a witness belonged to a gang that required its members to commit perjury; however, the court prevented testimony regarding the name of the gang to minimize potential prejudice.

[17]The majority asserts that the fact of Mr. Ganger's acquittal on the charge lessens the prejudicial effect. However, there is no indication from the record that the trial
(continued...)

10

that the trial court's failure to do so constitutes an abuse of discretion. See generally *Talley*, *supra* at 387; see also *United States v Robinson,* 174 US App DC 224, 229; 530 F2d 1076 (1976), stating that it is preferable that district courts perform the FRE 403 balancing analysis expressly.

## III. The Error Requires Reversal.

My determination that the trial court abused its discretion would not end the matter. Rather, this Court can reverse because of the error only if defendant establishes that it is more probable than not that the error resulted in a miscarriage of justice. MCL 769.26. In my view, defendant has sustained his burden.

Here, the only evidence of defendant's guilt was the testimony of the complainant. Thus, Ganger's credibility was key. Had the jury believed Ganger's testimony that the complainant stated on two separate occasions that defendant did not sexually touch her, defendant would likely have been acquitted. The effect of the evidence that defendant's star witness had been charged with molesting a young child cannot

---

[17](...continued)
court relied on this fact in admitting the challenged evidence. Thus, I find this fact inapposite. See also *Old Chief v United States*, 519 US 172, 182, n 6; 117 S Ct 644; 136 L Ed 2d 574 (1997), stating that, when reviewing trial courts' decisions to admit evidence of prior bad acts, "[i]t is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight."

11

be underestimated. Hence, it affirmatively appears more probable than not that the error was outcome determinative.

## IV. Conclusion

Evidence of a witness' past arrests may be admitted to establish bias if, in its sound discretion, the trial court determines that admission is consistent with the safeguards of the Michigan Rules of Evidence. However, to ensure against abuse of this rule, I would require a finding that a particularized bias exists, and that it is reasonably probable that the past arrest caused witness bias.

Here, the trial court's failure to analyze the challenged evidence's prejudicial effect and to compare that to its probative value was an abuse of discretion. Because it affirmatively appears that the error in this case resulted in a miscarriage of justice, I would reverse the Court of Appeals decision to affirm defendant's convictions.

CAVANAGH, J., concurred with KELLY, J.